# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Vetta-Zelo, Inc., | Civ. No. 13-367 (MJD/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ideum, Inc., | |
| Defendant. | |

Brigid M. Goss, Esq., Best & Flanagan LLP, counsel for Plaintiff.

Kelly G. Laudon, Esq., Lindquist & Vennum PLLP, counsel for Defendant.

## INTRODUCTION

Plaintiff Vetta-Zelo, Inc. ("Vetta-Zelo"), filed this action against Defendant Ideum, Inc. ("Ideum"), seeking damages for claims of breach of contract, breach of warranty, and misrepresentation. This matter is before this Court on Ideum's Motion to Dismiss the Complaint of Vetta-Zelo, Inc. or, in the Alternative, for Summary Judgment (Doc. No. 5), brought pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) and, alternatively, Rule 56 of the Federal Rules of Civil Procedure. The District Court has referred the motion to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 21.) For the reasons stated below, this Court recommends that Ideum's motion be granted and this case be dismissed for lack of personal jurisdiction.

## BACKGROUND

Vetta-Zelo is a marketing agency located and operated in Minnesota. (Doc. No. 1-1, Compl. ¶ 1.)  In March 2009, Vetta-Zelo started to provide marketing services for Health Management Associates.  (Doc. No. 12, Declaration of Jon Trettel ("Trettel Decl.") ¶ 3.)  Health Management Associates ("HMA") is based in Florida and operates hospitals throughout the country, primarily in the southeast and southwest United States.  (*Id.*)  In January 2011, HMA selected Vetta-Zelo to assist in redesigning several of its hospitals' emergency rooms.  (Trettel Decl. ¶ 7.)  As part of this project, Vetta-Zelo sought interactive computer tables for children to use in each hospital's emergency room.  (Compl. ¶ 5.)  Vetta-Zelo searched for computer tables that would operate continuously and withstand constant use by child patients.  (*Id.*)

Vetta-Zelo discovered Ideum as a possible vendor for the computer tables through trade-show listings and the Ideum's website.[1]  (Trettel Decl. ¶ 8.)  Ideum is a corporation located and operated in New Mexico and engaged in the business of computer-hardware development, sales, and distribution.  (Compl. ¶ 2.)  Vetta-Zelo first contacted Ideum by email, after which Vetta-Zelo and Ideum communicated on at least six separate occasions about the specifications and

---

[1]     Through Ideum's website, customers can purchase software products but no hardware equipment.  (Doc. No. 8, Declaration of James Spadaccini ("Spadaccini Decl.") ¶ 10.)

capabilities of Ideum's products.[2] (Trettel Decl. ¶¶ 11–12.) In June of 2011, Vetta-Zelo's president and owner traveled to Ideum's headquarters in New Mexico to discuss the terms of a potential sale. (Spadaccini Decl. ¶ 5.) Ideum then agreed to sell Vetta-Zelo six "MT32 Pico Multitouch Tables with a 32 [inch] LCD/LED Screen and 32-point touch overlay" ("the tables") over the course of several months, and details of the initial sale were confirmed via email. (Compl. ¶ 6; Trettel Decl. ¶ 15, Ex. 7 at 2–3.) Vetta-Zelo and Ideum did not sign a written contract for the tables. (Spadaccini Decl. ¶ 6.)

Between July 19, 2011, and January 18, 2012, Ideum sent Vetta-Zelo three invoices for the creation and shipping of the six tables. (*Id.* ¶ 7, Ex. 1–3.) Ideum sent the invoices to Vetta-Zelo in Minnesota by email. (Trettel Decl. ¶ 16.) Vetta-Zelo paid for the tables in full and then charged HMA for the tables at a marked-up price.[3] (Compl. ¶ 8; Trettel Decl. ¶ 21.) Based on the parties' agreement, Ideum shipped the tables directly to the HMA hospitals in Florida, Georgia, Mississippi, and Oklahoma. (Compl. ¶ 8.) Ideum never shipped a table to Vetta-Zelo in Minnesota. The purchase of each table included a one-year warranty for

---

[2]    Each of these communications took place either by email or telephone. (Spadaccini Decl. ¶ 8.)

[3]    Vetta-Zelo paid Ideum $12,500 for each computer table, then sold the tables to HMA for $17,500 each. (Trettel Decl. ¶ 21.)

parts and labor.[4]  (Spadaccini Decl. ¶ 7, Ex. 4 at 3.)

Before the end of 2011, technical problems arose with the tables at the hospital sites.  (Trettel Decl. ¶ 22.)  After Vetta-Zelo relayed the hospitals' complaints to Ideum, Ideum contacted, by phone and email, both Vetta-Zelo and various hospital technical staff.  (*Id.* ¶ 22, Ex. 11; ¶ 23, Exs. 12–13.)  And after Vetta-Zelo relayed a number of complaints, Ideum encouraged Vetta-Zelo to instruct its hospital clients to contact Ideum directly for technical support.  (*Id.* ¶ 22, Ex. 11; ¶ 23, Exs. 12–13.)  At one point during the attempts to resolve the technical problems with the tables, Vetta-Zelo shipped one of the tables from an HMA hospital in Florida to Minnesota.  (*Id.* ¶ 26.)  Ideum prepared and emailed to Vetta-Zelo a quote to fix this table, including the cost of shipping the table from Minnesota to New Mexico.  (*Id.* ¶ 31, Ex. 19 at 4.)  Vetta-Zelo, however, never shipped this table to New Mexico for repair.  (*Id.* ¶ 31.)  Finally, in February of 2012, Vetta-Zelo informed Ideum that the technical problems with the tables were affecting Vetta-Zelo's credibility with its HMA clients.  (*Id.* ¶ 27, Ex. 15 at 5.)  In response, Ideum told Vetta-Zelo that it would no longer be providing technical support for any software issues, but it would continue to support hardware issues

---

[4]      Information about the warranty was included in the Owners Guide that Ideum included with each table that it shipped to an HMA hospital.  (Spadaccini Decl. ¶ 7, Ex. 4.)

through direct contact with the hospitals.[5]  (*Id.* at 3.)

Prior to Vetta-Zelo's orders for the tables, Ideum had never sold any hardware units to customers located in Minnesota.  (Spadaccini Decl. ¶ 11.) Ideum did sell one software package to a customer in Minnesota in 2010, but it was an unsolicited order.  (*Id.*)  Although customers could purchase software using Ideum's website, Ideum had not sold any software through its website to customers in Minnesota since at least January 1, 2010.  (*Id.* ¶ 10.)  Since Vetta-Zelo's orders, Ideum has sold hardware to customers in Minnesota, but the sales were unsolicited, and none of Ideum's employees traveled to Minnesota in connection with these sales.  (*Id.* ¶ 12.)  In addition to these sales, employees of Ideum were present in Minnesota to attend a three-day event known as Museum Expo in Minneapolis in May of 2012.  (*Id.* ¶ 14.)  Ideum had a booth at this event and has attended the event annually in various cities across the country.[6]  (*Id.*)

Ideum has never had offices or employees located in Minnesota.  (*Id.* ¶ 4.) Ideum also has never used any third-party contractors located in Minnesota. (*Id.*)  Ideum does not own or lease any property in Minnesota, does not have any bank accounts or distributors in Minnesota, and has never registered to do

---

[5]     The software product that Ideum supplied for the hospitals was "an amalgamation of demo apps" that Ideum put together at no cost to Vetta-Zelo. (Trettel Decl. ¶ 27, Ex. 15 at 3.)

[6]     Ideum did not sell any products, either hardware or software, at this expo. (Spadaccini Decl. ¶ 14.)

business in Minnesota.  (*Id.*)

Vetta-Zelo commenced this action in state court on January 17, 2013 (Trettel Decl. ¶ 32), and Ideum removed the case to this Court on February 14, 2013.  (Doc. No. 1.)  On February 21, 2013, Ideum filed its Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 5), which is now before the Court.  Vetta-Zelo filed a written response in opposition to Ideum's motion on March 14, 2013 (Doc. No. 11), and Ideum filed a reply on March 28, 2013.  (Doc. No. 17.)  The District Court referred the motion to this Court for a Report and Recommendation on April 12, 2013.  (Doc. No. 21.)  On May 20, 2013, this Court held a hearing on the matter at which counsel for both parties appeared.  (Doc. No. 23.)

## DISCUSSION

### I.    Personal Jurisdiction

#### A.    Personal Jurisdiction Standard

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant.  *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996); *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (stating that while the plaintiff eventually bears the burden to establish personal jurisdiction by preponderance of the evidence, when personal jurisdiction is decided based on affidavits, prior to an

evidentiary hearing, the plaintiff need only establish a prima facie showing of

personal jurisdiction).  When deciding whether the plaintiff has made the requisite

showing, "the court must look at the facts in the light most favorable to the

nonmoving party, and resolve all factual conflicts in favor of that party."  *Dakota*

*Indus.*, 946 F.2d at 1387 (citations omitted).

> A two-step inquiry is employed when determining whether a federal
> court has jurisdiction over a non-resident party: (1) whether the facts
> presented satisfy the forum state's long-arm statute, and (2) whether
> the nonresident has 'minimum contacts' with the forum state, so that
> the court's exercise of jurisdiction would be fair and in accordance
> with due process.

*Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir.

1991) (quotations omitted).  The Minnesota long-arm statute extends jurisdiction

to the fullest extent permitted by the due process clause.  *Id.*  Thus, the Court

need only determine whether exercising personal jurisdiction over Ideum

complies with due process in this case.

The Eighth Circuit has explained the personal-jurisdiction requirements of

due process as follows:

> The due process clause requires there be minimum contacts
> between the defendant and the forum state before the forum state
> may exercise jurisdiction over the defendant . . . .  Sufficient contacts
> exist when the defendant's conduct and connection with the forum
> State are such that he should reasonably anticipate being haled into
> court there, . . . and when maintenance of the suit does not offend
> traditional notions of fair play and substantial justice . . . .  In
> assessing the defendant's reasonable anticipation, there must be
> some act by which the defendant purposefully avails itself of the
> privilege of conducting activities within the forum State, thus invoking
> the benefits and protections of its laws.

*Id.* at 528–29 (citations and quotations omitted). "Minimum contacts must exist either at the time the cause of action arose, at the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citation omitted). "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted). This is particularly true "when all elements of the defendant's performance are to take place outside of the forum." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303–04 (8th Cir. 1979).

To determine whether the exercise of jurisdiction comports with due process, the Court examines five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted). The first three factors are the primary factors in the analysis; the last two factors are considered secondary. *Id.*

The third factor distinguishes general jurisdiction from specific jurisdiction. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995). "Specific jurisdiction refers to jurisdiction over causes of

action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted). General personal jurisdiction exists when a party has "continuous and systematic" contacts with the forum state. *Id.* In this case, Vetta-Zelo contends that the Court has specific jurisdiction over Ideum. Vetta-Zelo also argues that the Court may have general jurisdiction over Ideum, but it concedes that it currently lacks sufficient information to show that the Court has general personal jurisdiction. In support of its motion to dismiss, Ideum submits a Declaration of its President, James Spadaccini (Doc. No. 8, Spadaccini Decl.). In support of showing a prima facie case for jurisdiction, Vetta-Zelo submits a Declaration of its President, Jon Trettel (Doc. No. 12, Trettel Decl.).

### B. Specific Jurisdiction

#### (i) The First Three Factors: Nature, Quality, and Quantity of Defendant's Contacts and the Relation of the Cause of Action to the Contacts

Vetta-Zelo alleges that Ideum is subject to personal jurisdiction because it entered into a contract with Vetto-Zelo, a Minnesota corporation, and it engages in "continuous and purposeful marketing activities within the state." (Compl. ¶ 3.) In addition, Vetta-Zelo asserts that the following contacts are sufficient to satisfy the requirements of due process: (1) Ideum spoke or emailed with a Vetta-Zelo

representative from Minnesota prior to making the agreement and after problems with the tables arose; (2) Ideum maintained an interactive website; (3) Ideum's invoices to Vetta-Zelo were addressed to Vetta-Zelo in Minnesota; and (4) Ideum provided warranties with the sale of the tables and agreed to provide service and technical support for the tables. (Doc. No. 11, Mem. of Law in Opp'n to Def. Ideum, Inc.'s Mot. to Dismiss ("Pl.'s Opp'n") 13–16.) Ideum, on the other hand, asserts that it has no business presence in Minnesota, and it describes its only contact with Minnesota in its dealings with Vetta-Zelo as receiving an unsolicited order from a Minnesota resident for the manufacture and shipment of the tables to consumers in states other than Minnesota. (Doc. No. 7, Mem. of Law in Supp. of Def. Ideum, Inc.'s Mot. to Dismiss ("Def.'s Mem.") 7.)

The fact that Ideum entered into a contract and transacted business with a Minnesota company does not alone subject Ideum to personal jurisdiction in Minnesota. *See Jacobs Trading v. Ningbo Hicon Int'l Indus.*, 872 F. Supp. 2d 838, 843 (D. Minn. 2012) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985)); *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (quotations omitted) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state."). "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Mountaire Feeds, Inc.*, 677 F.2d at 655 (quoting *Aaron*

*Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977)).  The Court must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining "whether the defendant purposefully established minimum contacts within the forum."  *Burger King Corp.*, 471 U.S. at 479.

This Court concludes that, when considering the facts in the light most favorable to Vetta-Zelo, the nature, quality, and quantity of Ideum's contacts with Minnesota do not establish sufficient minimum contacts.  Vetta-Zelo initiated the relationship with Ideum.  Vetta-Zelo traveled to New Mexico to meet with Ideum and to inspect the products, but no Ideum representative ever traveled to Minnesota in connection with the sale to Vetta-Zelo.  All of the negotiations related to the sale of the tables either occurred in New Mexico or took place by email and telephone.  And these contacts were not extensive.  In total, an Ideum employee and Vetta-Zelo's President Jon Trettel had approximately six communications prior to the sale.  Although a Vetta-Zelo representative may have mentioned the possibility of future purchases from Ideum, the oral contract for the sale of the tables did not contemplate any future obligations or ongoing relationship between the parties, and no written contract for the purchase of the tables was entered into between Vetta-Zelo and Ideum.  After the deal was made in New Mexico and confirmed via email, Ideum shipped all of the tables to designated hospitals in Florida, Georgia, Mississippi, and Oklahoma; Ideum did

not ship any tables to Minnesota in connection with the sale.  Vetta-Zelo initiated several follow-up communications with Ideum after the delivery of the tables regarding technical support servicing issues.  The parties agreed that the tables would be shipped directly to the hospitals that were owned by HMA, Vetta-Zelo's client.  Vetta-Zelo asserts there were future obligations that flowed from the contract, including warranties and the promise to service and provide technical support for the tables.  However, the Owners Guides containing operating and warranty information were shipped along with the tables to the hospitals.  And there is no evidence that Ideum agreed that it would go through Vetta-Zelo to provide the support services.  In fact, the evidence shows that Ideum preferred to have direct contact with the hospital clients when providing these services.  And in fact, all post-sale services Ideum provided were directed to servicing tables that were then located in the states where the tables were delivered – not in Minnesota.  In other words, Ideum's sales, including any warranties attached, did not require Ideum to do anything in Minnesota or provide any product or service to Minnesota.  *See Iowa Elec.*, 603 F.2d at 1303–04.  Ideum's only contacts with this forum was its email and telephone communications with Vetta-Zelo, which Vetta-Zelo initiated, and its invoices to Vetta-Zelo, which indicated that the tables would be delivered somewhere other than Minnesota.  Otherwise, Ideum did not direct any of its activities in the transactions with Vetta-Zelo to Minnesota.

Interstate communications such as those that took place here do not provide sufficient contacts to allow the Court to exercise personal jurisdiction. *See Jacobs Trading*, 872 F. Supp. 2d at 844 (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) ("The use of interstate facilities (telephone, the mail) [and] the making of payments in the forum state . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process.")); *Bell Paper Box, Inc.*, 53 F.3d at 922 (stating there was no personal jurisdiction where only a single purchase order linked the defendant to the forum state); *Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (stating that these types of communications may be considered in conjunction with other contacts to establish personal jurisdiction).

In addition, delivery terms are "relevant to the finding of personal jurisdiction," *Wells Dairy, Inc. v. Food Movers Int'l., Inc.*, 607 F.3d 515, 520 n.2 (8th Cir. 2010), even though delivery terms providing for delivery outside of the forum state do not necessarily preclude a finding of personal jurisdiction. *See, e.g., Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001) (finding sufficient minimum contacts between the defendant and the forum state even though the goods at issue were to be sold "F.O.B. Hong Kong"). Here, therefore, the delivery term in Ideum's invoices, providing for delivery in states other than Minnesota, does not preclude a finding of personal jurisdiction, but it weighs

against it.  Further, even if the parties contemplated at one time that one of the shipments might be made to Minnesota, this lawsuit did not arise from or relate to the shipping of the product.  This potential contact with Minnesota is unrelated to the claims alleged in this litigation.

Ideum has no other demonstrated contacts with Minnesota related to finding specific personal jurisdiction.  It has no offices or employees or third-party contractors working for it located in Minnesota, it has no bank accounts and owns no property in Minnesota, it does not utilize distributors or have distribution channels through any persons or entities in Minnesota, and it has never registered to do business in Minnesota.  In addition, Mr. Spadaccini declares that Ideum does not advertise in Minnesota, and its website does not target residents of Minnesota.

Plaintiff points to Ideum's website to support this Court finding personal jurisdiction over Ideum, as the record reflects that Vetta-Zelo found Ideum, in part, through Ideum's website.  However, Vetta-Zelo did not order any product through that website, and more important to this specific jurisdiction question, the website does not provide for customers to purchase tables with loaded software on them the way that Vetta-Zelo purchased the tables directly from Ideum. Therefore, as to the specific website contacts that relate to the claims asserted in this case that would be relevant for a specific personal jurisdiction determination, the record contains only an indication that Vetta-Zelo viewed the website.  Merely

learning about a product on a website is a passive contact that is typically insufficient to create specific jurisdiction. *See Greenbelt Res. Corp. v. Redwood Consultants, L.L.C.*, 627 F. Supp. 2d 1018, 1027 (D. Minn. 2008) (stating that "[p]assive websites are those upon which a defendant has posted information accessible to interested users in foreign jurisdictions and are not grounds for the exercise of personal jurisdiction," and concluding that the website at issue, which did not allow for an exchange with a host computer (although it did allow a visitor to send an electronic mail message to defendant), and did not appear to allow for products to be purchased or contracts to be entered into via the website, was a passive website).

Vetta-Zelo argues that this case is analogous to *K-Tel Int'l, Inc v. Tristar Prods.*, 169 F. Supp. 2d 1033 (D. Minn. 2001). In *K-Tel Int'l*, the court found the evidence sufficient to establish specific personal jurisdiction over the nonresident defendant. That evidence included that (1) the nonresident entered into a contract with the Minnesota party that "by its very terms contemplated on-going duties from both of the parties," (2) the nonresident signed the contract and faxed it to Minneapolis; (3) all payments to the nonresident were directed to it via wire transfers from the Minneapolis corporation; (4) there were "repeated, sometimes daily, correspondence, telephone communications, mail and facsimiles between employees and agents of [the nonresident] and employees and agents of" the Minnesota plaintiff, and (5) the nonresident party had named the Minnesota

corporation as an "additional insured" on its insurance policy.  *Id.* at 1041.   Unlike

the defendant in *K-Tel*, Ideum did not initiate the business relationship with Vetta-

Zelo and did not name Vetta-Zelo as an additional insured on its insurance policy.

Although the agreement between the parties was confirmed via email from Ideum

(which is akin to signing a contract and faxing it to Minnesota), and payments to

the nonresident were sent to it from the Minnesota company, there is no

indication in this case of "constant communication" or "numerous phone calls and

faxes" into the forum state.  Nor did the very essence of the parties' agreements

here contemplate on-going duties from the parties to each other; instead, Ideum

steered its post-sale contacts toward end users in places other than Minnesota

rather than with Vetta-Zelo.  Further, like in *Jacobs Trading*, "there has been no

showing here that [Defendant] aimed its conduct at Minnesota, that [Defendant]

intended to induce commercial activity in Minnesota, or that Minnesota was

somehow the focal point of the alleged wrongdoing."  872 F. Supp. 2d at 847.

"The mere making of statements to a resident of a forum state is not the same as

directing activity toward the forum state."  *Id.*

Vetta-Zelo also argues that this case is analogous to *Nicollet Cattle Co.,*

*Inc. v. United Food Group, LLC*, No. 08-5899 (JRT/FLN), 2009 WL 2218792 (D.

Minn. July 23, 2009).  The court in *Nicollet Cattle* stated that while neither email

and telephone contacts alone, nor the mere presence of a contract between

diverse parties alone, is typically enough to establish personal jurisdiction, "those

16

general principles do not preclude an exercise of personal jurisdiction where such contacts—in combination, or along with any additional indicia of engagement with a disputed forum—demonstrate a 'substantial connection' with a forum state . . . even if the defendant never physically enters the jurisdiction." *Id.* at *3 (citation omitted). The court also noted that "the ubiquitous role of the internet in modern business further underscores the need for courts to consider practical realities in applying the 'minimum contacts' standard." *Id.* at *4. There, the court exercised personal jurisdiction where the evidence reflected a "consistent, extensive relationship" between the parties. *Id.* However, the evidence presented in *Nicollet Cattle* showed that the parties' relationship was much more extensive than the relationship between Ideum and Vetta-Zelo here. In *Nicollet Cattle*, the Minnesota company made 530 separate sales to the nonresident company over a three-year period, which resulted in the 127 contracts at issue in the litigation, and there were hundreds of email and phone communications with the Minnesota company. *Nicollet Cattle*, 2009 WL 2218792, at *4. The court concluded that this evidence showed a "longstanding, significant relationship" between the two companies. *Id.* at *5. The court also noted, as to a secondary factor, that "the routing of tens of millions of dollars through Minnesota's economy . . . . strongly implicate Minnesota's interests in providing a forum for resident corporations." *Id.* at *4.

Here, there is no evidence of a longstanding, significant relationship between Ideum and Vetta-Zelo.  Instead, the record reflects that there were only six tables sold over the course of three transactions, the communications prior to the sales were limited in number, and the communications after these sales were for the purpose of effecting support services from Ideum under their original contract and were not for the purpose of effecting future sales.  Further, although less important, unlike in *Nicollet Cattle*, there was no money entering Minnesota's economy, but instead it was the Minnesota company making payments to the nonresident company.

In sum, Vetta-Zelo unilaterally sought out Ideum, initiated communications with Ideum, actively pursued a business relationship with Ideum, visited Ideum's facilities in New Mexico, and consummated the sale in New Mexico.  Ideum's warranties, if any, were not uniquely aimed at Minnesota, and Ideum did not seek commercial benefit in Minnesota or purposefully avail itself of the privilege of conducting activities within Minnesota or invoke the benefits and protections of Minnesota laws.  *See Jacobs Trading*, 872 F. Supp. 2d at 847–48 (making similar findings).  Therefore, based on the parties' negotiations, the lack of an agreement that contemplated a future business relationship between the two, and the parties' actual course of dealing, there is no indication that Ideum purposefully established minimum contacts within Minnesota.

**(ii) The Secondary Factors: The Interests of the Forum State and the Convenience of the Parties**

It is undisputed that Minnesota has a strong interest in providing a forum for its citizens. *Marshall v. Inn of Madeline Island*, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000) (citation omitted). However, as noted above, there were only a limited number of sales made to Vetta-Zelo, and the affect that those sales may have had on Minnesota's economy is most likely minimal. Therefore, this factor weighs only slightly in favor of jurisdiction.

Neither party argues that convenience of the parties weighs in its favor. This Court concludes that while it may be inconvenient for Vetta-Zelo to litigate outside Minnesota, it is equally inconvenient for Ideum to litigate in Minnesota. Therefore, the convenience of the parties does not weigh in favor of either party.

When viewing the record in the light most favorable to Vetta-Zelo, and when applying proper weight to the factors discussed above, this Court concludes that Plaintiff has not established a prima facie case of specific personal jurisdiction over Defendant in Minnesota.

**C.      General Jurisdiction**

"A court may assert general jurisdiction over foreign corporations only if they have developed 'continuous and systematic general business contacts' with the forum state, '[so] as to render them essentially at home in the forum State.'" *Viasystems, Inc., v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589,

595 (8th Cir. 2011) (citations omitted). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011)).

Vetta-Zelo asserts that Ideum directs internet advertising to Minnesota. (*See* Trettel Decl. ¶ 9, Ex. 5.) The screenshot pointed to by Vetta-Zelo, like Ideum's website, does not indicate any contacts with Minnesota, nor does it show that Ideum targets residents of Minnesota. Although the website does permit customers to purchase software products on-line, Ideum does not sell its hardware equipment on-line. Since at least January 1, 2010, Ideum has not sold any such software products via the website to any customers located in Minnesota. Therefore, this Court concludes that Ideum's use of its website does not provide continuous and systematic general business contacts with Minnesota that would support a prima facie case that Minnesota has general personal jurisdiction over Ideum.

Ideum had not sold any hardware units to customers located in Minnesota prior to Vetta-Zelo's orders, and since Vetta-Zelo's orders, Ideum has sold hardware to a handful of customers in Minnesota, but the sales were unsolicited, and none of Defendant's employees traveled to Minnesota in connection with

these sales.[7]  Ideum did sell one software package to a customer in Minnesota in 2010, as referenced above, but it was an unsolicited order.  And Ideum has not sold any software through its website to customers in Minnesota since at least January 1, 2010.  In May 2012, Mr. Spadaccini and one other Ideum employee did take a business trip to Minneapolis, Minnesota, to attend a three-day event known as Museum Expo.  Ideum had no role in the selection of the location for the event, and it has attended the event annually in recent years in locations outside Minnesota.  Ideum did have a booth at the expo but it consummated no sales during the event.  Finally, Ideum again points out that it does not have any business operations, employees, or distributors in Minnesota, it is not registered to do business in Minnesota, and it does not target its marketing to Minnesota residents.

Vetta-Zelo requests the Court grant jurisdictional discovery to see whether it can uncover more of Ideum's contacts with the forum to see whether general

---

[7]    These sales include the following: (1) one table unit to the Minneapolis Institute of Arts for $22,875.29, in October 2011; (2) one table unit to the Holy Family Catholic High School in Victoria, Minnesota, for $16,844.86, in October 2012; (3) two audio-visual wall units to The Walker Art Center for $36,969.62, in November 2012; and (4) in February 2013, it received an order from the Science Museum of Minnesota for one table unit for $18,137.22.  (Spadaccini Decl. ¶ 12.) In addition, Ideum sold two table units pursuant to unsolicited orders placed by companies in New Jersey and Virginia, which Ideum was directed to ship to entities located in Minnesota.  (*Id.*)  The total dollar value of Ideum's sales to Minnesota-based customers for fiscal year 2012, was approximately $54,000, which constitutes only 1.8% of Ideum's total sales for that period.  (*See id.* ¶ 13; *see also* Def's Mem. 6 n.2.)

personal jurisdiction can be established.  However, Ideum has already provided a sworn affidavit showing what appears to be the entirety of any potential relevant contacts with Minnesota.  And Vetta-Zelo has not provided any reason why the Court should view the affidavit as incorrect or incomplete.  Therefore, this Court recommends denying this request, as there is nothing to indicate that any discovery would indicate any more contacts than have already been described by Ideum.  Because the few contacts that did occur are not "continuous and systematic" contacts with Minnesota so as to render Defendant "essentially at home in the forum State," *Viasystems, Inc.*, 646 F.3d at 595, this Court concludes that it should not exercise general personal jurisdiction over Defendant.  *See Jacobs Trading*, 872 F. Supp. 2d at 849 ("Moreover, a total of twenty individual shipments to only four Minnesota companies over a period of more than four years does not constitute such 'continuous and systematic' contacts with the forum such that this Court could exercise general personal jurisdiction over [the defendant]."); *see also Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) ("Simple commercial contacts, unrelated to [plaintiff]'s claims are insufficient to establish [general] personal jurisdiction.").

Because this Court concludes that the Court should not exercise personal jurisdiction over Ideum, the Court need not decide the remaining issues raised by Ideum in its motion to dismiss, namely, whether the Court has subject-matter jurisdiction and whether Vetta-Zelo has plead its misrepresentation claim with

sufficient particularity.  For completeness, however, this Court makes the following recommendations.

## II.    Subject-matter Jurisdiction

Ideum argues that Vetta-Zelo does not have standing to assert the claims it has plead against Ideum because it is not the real party in interest entitled to assert these claims.  Vetta-Zelo has the burden of establishing its standing to maintain this action, as a prerequisite to conferring subject-matter jurisdiction on the Court.  *See Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012) (stating that the plaintiff has the burden of proving standing according to Article III of the United States Constitution, which is a prerequisite for subject-matter jurisdiction.)

To satisfy the requirements of standing, a plaintiff must establish (1) that it suffered injury in fact; (2) that is fairly traceable to the defendant's actions; and (3) its injury is likely to be redressed by its obtaining a favorable decision on the merits.  *See, e.g., Hargis*, 674 F.3d at 790.  In addition, Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest."  The Court of Appeals for the Eighth Circuit has recognized that the function of this Rule "is simply to protect the defendant against a subsequent action by the party actually entitled to recovery, and to ensure generally that the judgment will have the proper effect as res judicata." *Curtis Lumber Co. v. Louisiana Pacific Corp.*, 618 F.3d 762, 771 (8th Cir. 2010)

(quoting Fed. R. Civ. P. 17(a) advisory committee note (1966), and concluding that being the real party in interest was a requisite element of satisfying the threshold requirement to prove standing).

Ideum contends that, based on Mr. Spadaccini's understanding, the facts show Vetta-Zelo was acting as an agent for the HMA when purchasing the tables at issue. And as an agent for a disclosed principal, Ideum asserts that Vetta-Zelo is "neither a party to a contract entered by the agent for purposes of seeking redress, nor is it a 'buyer in the ordinary course of business' entitled to seek recovery for breaches of warranty under the Uniform Commercial Code as adopted in Minnesota." (Doc. No. 7, Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") 14–15 (citing Minn. Stat. § 336.1 – 201(b)(9).) Ideum further contends that Vetta-Zelo, as an agent, cannot claim that it was damaged by any breach of contract or warranty, and thus cannot satisfy a necessary element of standing.

Vetta-Zelo asserts that it was not conducting business with Ideum as HMA's agent. Vetta-Zelo claims that HMA was its client, and that it was acting on its own when it purchased the tables from Ideum, which is evidenced, says Vetta-Zelo, by Vetta-Zelo paying for the tables directly and then re-selling the tables to the HMA hospitals. Further, Vetta-Zelo asserts that it does have damages based on the breach of warranty and breach of contract claims because it still needs to fulfill its contract obligations with its client – HMA. In other words, because the

tables purchased from Ideum do not work, Vetta-Zelo claims that it will have to spend additional money because it has to go out and purchase replacement tables from a different vendor.

This Court concludes that there are genuine fact disputes that cannot be resolved at this stage in the litigation to determine whether Vetta-Zelo was acting as HMA's agent, is the real party in interest, and has standing to sue Ideum for the claims alleged. Further, it is unclear based on the record before this Court, whether duplicate litigation and duplicate awards would be possible if the Court were to allow Vetta-Zelo to pursue the claims as alleged and if the hospital clients were to bring their own separate action against Ideum for breach of warranty. Therefore, if the District Court determines that it does have personal jurisdiction (which this Court concludes that it does not), then this Court recommends that discovery should commence so that the issues raised by Ideum with respect to subject-matter jurisdiction can be analyzed on a full record. This Court notes that if the Court determines at any time during the course of the litigation that it lacks subject-matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## III.    Claim for Misrepresentation

Defendant argues that Vetta-Zelo's attempt to plead a claim for misrepresentation fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Again, the District Court need not address this

issue if it agrees that it lacks personal jurisdiction over Ideum. If, however, the Court concludes jurisdiction exists, this Court recommends that Vetta-Zelo's claim for misrepresentation should be dismissed for failure to comply with Rule 9.

Federal Rule of Civil Procedure 9(b) requires fraud claims to be stated with particularity. The particularity requirements similarly apply to negligent misrepresentation claims. *See Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity."). To be sufficiently particular, a plaintiff must provide "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Stark v. Monson*, Civ. No. 07-4373 (MJD/AJB), 2008 WL 189959, at *8 (D. Minn. Jan. 22, 2008) (quotations omitted); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (stating that the pleading must identify "who, what, where, when and how"). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (citing *In re Flight Transp. Corp. Sec. Litig.*, 593 F. Supp. 612, 620 (D. Minn. 1984)).

Vetta-Zelo has failed to plead fraud with particularity because it fails to identify who made any representation at issue, but only generally refers to

"Defendant's sales person." Further, Vetta-Zelo failed to specify when, where, and how the statements were made. *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (stating that plaintiff is required to specify which statements were fraudulent; identify the speaker; state where and when the statements were made; and explain why the statements were fraudulent). Nowhere in the Complaint does Vetta-Zelo state specifically when or where the representation was made. Therefore, based on the lack of particularity as to the misrepresentation claim in the Complaint, this Court finds that Vetta-Zelo has not provided Ideum with sufficient notice of its claim as required by Rule 9(b). Accordingly, if the District Court concludes it has jurisdiction, this Court recommends granting Ideum's motion to dismiss the misrepresentation claim (Count Four).[8]

---

[8]     This Court notes that Local Rule 15.1 provides that "[a] party who moves to amend a pleading shall file such motion and shall attach to the motion . . . a copy of the proposed amended pleading . . . ." In response to Ideum's motion, Vetta-Zelo asked for permission to amend to re-plead its misrepresentation claim, but Vetta-Zelo did not file a motion to amend, nor has it submitted a copy of the proposed amended pleading, as thus has failed to comply with this procedural requirement. *See Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985) (finding the district court did not abuse its discretion in failing to grant leave to amend where the plaintiff "merely concluded her response to the [defendant]'s motion to dismiss with a request for leave to amend" and did not submit a proposed amendment along with her motion).

# RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Ideum, Inc.'s Motion to Dismiss the Complaint of Vetta-Zelo, Inc. or, in the Alternative, for Summary Judgment (Doc. No. 5), be **GRANTED** for lack of personal jurisdiction.


Date: June 4, 2013

_s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 18, 2013,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.